**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0729-15T2

STATE OF NEW JERSEY,
DEPARTMENT OF CHILDREN
AND FAMILIES,

     Respondent,

v.

Y.N.,

     Appellant.

_____

Argued November 2, 2016 — Decided March 3, 2017

Before Judges Fuentes, Carroll and Gooden Brown.

On appeal from the Department of Children and Families.

Clara S. Licata argued the cause for appellant.

Erin O'Leary, Assistant Attorney General, argued the cause for respondent (Christopher S. Porrino, Attorney General, attorney; Ms. O'Leary, on the brief).

Deric Wu, Assistant Deputy Public Defender, argued the cause for amicus curiae Office of Parental Representation (Joseph E. Krakora,

Public Defender, attorney; Mr. Wu, of counsel
and on the brief).

PER CURIAM

On June 29, 2011, the Family Part found the Division of Child Protection and Permanency (hereinafter "the Division") proved by a preponderance of the evidence that Y.N. (Yvonne)[1] abused or neglected her infant son, Paul, by using methadone before and during her pregnancy. Yvonne was prescribed methadone by a physician as part of a medically sanctioned treatment plan. This court affirmed the Family Part's finding of abuse and neglect based on evidence showing Paul suffered "severe withdrawal, which required treatment in the NICU and numerous doses of morphine over an extended period of time[.]" N.J. Div. of Youth & Family Servs. v. Y.N., 431 N.J. Super. 74, 82 (App. Div. 2013).

The Supreme Court granted Yvonne's petition for certification, 216 N.J. 13 (2013), and reversed, holding "that, absent exceptional circumstances, a finding of abuse or neglect cannot be sustained based solely on a newborn's enduring methadone withdrawal following a mother's timely participation in a bona fide treatment program prescribed by a licensed healthcare

---

[1] To preserve the confidentiality of these proceedings, we use pseudonyms to identify the child and his parents. R. 1:38-3(d)(12).

professional to whom she has made full disclosure." N.J. Div. of Child Prot. & Permanency v. Y.N., 220 N.J. 165, 168 (2014). The Court remanded the matter to this court "to decide whether there is sufficient credible evidence in the record to support the finding of abuse or neglect on an alternate theory articulated by the family court." Id. at 186.

On remand, this court reviewed the evidence the Division presented at the fact-finding hearing before the Family Part and concluded that the record was "inadequate to permit a meaningful determination of the alternative theories[]" of abuse or neglect. N.J. Div. of Youth & Family Servs. v. Y.N., No. A-5880-11 (App. Div. Mar. 18, 2015) (slip op. at 5). This court concluded that "the fairest procedure to all parties is a remand to the Family Part for a de novo fact-finding." Ibid.

On July 31, 2015, the Supreme Court granted Yvonne's petition for certification, summarily reversed this court's decision to remand, and vacated the Family Part's 2011 finding of abuse and neglect. N.J. Div. of Child Prot. & Permanency v. Y.N., 222 N.J. 308, 308—09 (2015).

> As the burden of presenting sufficient credible evidence of abuse and neglect is on the Division, the Appellate Division's conclusion in this regard is tantamount to a finding that the Division failed to satisfy that burden. The panel's determination

resolves the question posed by this Court in
its remand in favor of petitioner.

[Id. at 309.]

On August 13, 2013, while Yvonne's first appeal to the Supreme Court was pending, a person who identified herself as Paul's paternal aunt called the Division's "Hotline" and alleged that Yvonne "is a [h]eroin addict and she continues to use." As described in the Division's screening summary, the reporter claimed that Paul's father, Phil, went to Yvonne's home the previous night "and had to call the police four times[.]" According to the reporter, Phil stated there were "'drug addicts' throwing bricks and pipes through [Yvonne's] windows because [Yvonne] owe[d] them money." On that same day, Phil filed an order to show cause in the Family Part. Phil sought to obtain custody of his son, whom he believed was "in imminent danger of physical harm."

Phil's custody application was transferred to a Family Part judge who was hearing Yvonne's application to obtain a domestic violence temporary restraining order against Phil. During the hearing, the judge informed Yvonne that Phil had filed an order to show cause seeking custody of Paul, based on his belief that Yvonne was "back using drugs[.]" This prompted the following colloquy between Yvonne and the court.

4

THE COURT: [Yvonne], what is your position regarding this request to have custody at this time?

[YVONNE]: Your Honor, I feel that at this point, I have relapsed --

THE COURT: Okay.

[YVONNE]: -- and I feel that my son's father's concerns are legitimate.

THE COURT: All right.

[YVONNE]: And I appreciate his concern because he's done nothing --

THE COURT: I appreciate -- the [c]ourt appreciates the fact that you're being honest about it and are --

[YVONNE]: Yes.

THE COURT: -- and care enough about your son that you are -- you know, that you're willing to, at this point, grant [Phil] physical custody.

[YVONNE]: I am. Yes. And my son deserves to be with his father until I seek the adequate treatment that I deserve for myself, so that I can be the proper mother --

The subject matter of the call Phil's sister made to the Division's Hotline involved two separate incidents. The record includes two Newark Police Department incident reports documenting what occurred at Yvonne's residence. The first incident occurred at 10:05 p.m. on August 11, 2013. The police report identified the person who called to report "criminal mischief" as the manager

of the property where Yvonne and Paul resided at the time. Two police officers responded to investigate.

According to "the victim," later identified as Yvonne's mother, "she was watching television when she heard a knock at the front door." When she responded, she saw an African American man and a white man, neither of whom she recognized. Because she did not know these men, "she refused to open the door." The two men "proceeded to the backyard and began to forcibly kick the rear door." The men damaged her rear door and also shattered the kitchen and car windows. Yvonne told the responding officers that she knew both men. Although she did not know where they lived or their actual names, Yvonne told the officers "the street names" of both of these men. The African American man, whom she described as approximately twenty-six to twenty-eight years old, she knew as "Cy." She knew the white man only as "Powder."

The second incident occurred at 6:44 a.m. on August 12, 2013. The police report again identified the person who called as the manager of the property. Two police officers were dispatched to investigate what was first described as "a burglary in progress." The caller described the suspects as "two black males[.]" The two men "were outside the residence screaming[,] ['G]ive me my money[.']" They then proceeded to the rear of the location, where "one actor broke the rear window and the other actor began to kick

6                                                    A-0729-15T2

the rear door[,] causing some damage[.]"  Both men fled the scene before the police officers arrived.

Two Division investigators responded to Yvonne's residence on August 13, 2013.  They described the property as a "beige and white multi-family home[.]"  The investigators "immediately noticed" in their report "that there was no visible broken glass or damage to the home."  They stayed outside the property for approximately forty-five minutes to determine whether there was any indication of illicit drug activity.  They did not find anything to suggest any criminal activity had taken place.  Yvonne moved out of this property the following morning.

Division investigators met personally with Yvonne on August 15, 2013.  Paul was present and appeared to be in good health. Yvonne was alert and responsive and did not appear to be under the influence of any illicit drugs.  She admitted that the August 11, 2013 and August 12, 2013 incidents of vandalism were related to her history of substance abuse.  Furthermore, these incidents were the reasons she moved out of her home.  She denied using drugs at the time and stated she was receiving methadone treatment.  She claimed to have been sober and drug-free for two years.  The Division concluded its investigation, finding the allegations against Yvonne were "unfounded."

On July 7, 2014, the Division revisited its finding of neglect

A-0729-15T2

stemming from the August 13, 2013 referral. The Division changed its prior finding from "unfounded" to "substantiated" based on new information it received following the completion of the earlier investigation. By letter dated July 9, 2014, the Division informed Yvonne that it had "determined that neglect was substantiated for Substantial Risk of Physical Injury/Environment Injurious to Health and Welfare[.]" The letter apprised Yvonne of her right to appeal the decision and request "an Office of Administrative Law (OAL) Hearing." On August 1, 2014, Yvonne appealed and requested a hearing before the OAL. She also filed an application to compel the Division to "pay for Public Defender counsel" and to pay for the cost of an expert if necessary.

On September 19, 2014, Yvonne filed a motion for summary disposition of the matter before it was transmitted to the OAL. The Division Director denied the motion on December 1, 2014, and ordered that the matter be transmitted to the OAL for a hearing. On December 26, 2014, the Director denied Yvonne's application for counsel and expert fees. On August 27, 2015, the Division sent a form-letter to the Administrative Law Judge (ALJ) assigned to the case, advising that the Department of Children and Families (DCF) had "modified the finding[] . . . , resulting in a change from 'substantiated' to . . . 'established[.]'" The form-letter was signed by Brenda Phillips, MSW, Administrative Analyst I, DCF-

A-0729-15T2

Administrative Hearings Unit.

In a Notice of Change of Child Abuse or Neglect Finding dated September 23, 2015, DCF Newark-Northeast Local Office Manager Monica Chavez notified Yvonne, the Essex County Area Director, and the Supervising Family Service Specialists I and II that the DCF had formally changed its investigative finding from "substantiated" to "[e]stablished."

In this appeal, Yvonne argues she has the right to a hearing before an ALJ to challenge the evidential basis for the Division's finding that child abuse and neglect has been "established" against her. We agree and remand this matter for a hearing before an ALJ for the reasons expressed in N.J. Div. of Child Prot. & Permanency v. V.E., ____ N.J. Super. _____ (App. Div. 2017). Because "an established finding is a finding of child abuse or neglect under N.J.S.A. 9:6-8.21(c)(4), subject to disclosure as permitted by N.J.S.A. 9:6-8.10a(b) and other statutes," we conclude that "due process considerations require a party against whom abuse or neglect is established be afforded plenary administrative review." Id. (slip op. at 3).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION